UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARIA GALLAGHER, Individually,

    Plaintiff,

vs.                                              CASE NO. 3:20-cv-630-RGJ

PRINCE HOSPITALITY, INC., a Kentucky
Corporation,

    Defendant.

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT
(*Injunctive Relief Demanded*)

COMES NOW Plaintiff, MARIA GALLAGHER, on her behalf and on behalf of all other mobility-impaired individuals similarly-situated ("Plaintiff"), and hereby sues the Defendant, PRINCE HOSPITALITY, INC., a Kentucky Corporation, ("Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"),

## COUNT I
## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12181, *et seq.*

### I.  PARTIES

1. Plaintiff, MARIA GALLAGHER, is an individual residing in West Palm Beach, FL, in the County of Palm Beach.

2. Defendant's property, La Quinta by Wyndham Louisville is located at 1501 Alliant Ave., Louisville, KY, in the County of Jefferson.

### II.  JURISDICTION AND VENUE

3. This Court has original jurisdiction in this action. This Court has been given

original jurisdiction over actions arising from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. *See, also,* 28 U.S.C. § 2201 and § 2202.

4. Venue is properly in the United States District Court for the Western District of Kentucky because venue lies in the judicial district of the property situs. The Defendant's property is located in the Western District of Kentucky and the Defendant conducts business within this judicial district.

### III.  STATUTORY BACKGROUND

5. On July 26, 1990, Congress enacted the Americans with Disabilities Act of 1990, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

6. Among other things, Congress made findings in 42 U.S.C. § 12101(a)(1)-(3), (5) and (9) that included:

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

      d.      Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

      e.      The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

7.      Congress also explicitly stated in 42 U.S.C. § 12101(b)(1)(2) and (4) that the purpose of the Americans with Disabilities Act was to:

      a.      Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

      b.      Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

      c.      Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

8.      Furthermore, pursuant to 42 U.S.C. § 12182 and 28 C.F.R. 36.201(a), Congressional intent was for no place of public accommodation to discriminate against an individual, on the basis of such individual's disability, with regard to the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

9. Congress provided commercial businesses at least 18 months from enactment make their facilities compliant to the regulations in the Americans with Disabilities Act. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if the Defendant has ten (10) or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181 and 28 C.F.R. 36.508(a).

## IV.   THE PARTIES AND STANDING

10. Plaintiff, MARIA GALLAGHER is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Because of the condition of her hip, chronic right trochanteric bursitis, she gets around when going short distances, by the use of a walker or a cane; while going longer distances, she gets around through the use of a wheelchair.

11. Maria Gallagher travels to Louisville, KY approximately twice a year to visit her daughter and two granddaughters and her grandson, who reside there.

12. Mrs. Gallagher stayed at the La Quinta by Wyndham Louisville on July 14 - 15, 2020 and on October 13-14, 2020, and plans to return to the subject property in the near future, to avail herself of the goods and services offered to the public at the property, when the hotel is made accessible for her use.

On Mrs. Gallagher's first visit on July 14-15, 2020, she and her husband had made a reservation for a disabled room. As it turned out the room (guest room 103), was not a disabled room. She returned to the hotel on October 13-14, 2020, and was provided an accessible non-compliant room (guest room 108).

13. The Defendant has discriminated against the individual Plaintiff by denying her

4

access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by *42 U.S.C. § 12182 et seq*.

14. Defendant owns, or leases, (or leases to), or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 C.F.R. 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as La Quinta by Wyndham Louisville, and is located at 1501 Alliant Ave., Louisville, KY.

15. Maria Gallagher has a realistic, credible, existing and continuing threat of discrimination from the Defendant non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 17 of this First Amended Complaint. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendant. MARIA GALLAGHER desires to visit La Quinta by Wyndham Louisville, not only to avail herself of the goods and services available at the property but to assure herself that the property are in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

16. The Defendant has discriminated against the individual Plaintiff by denying her access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq.*, as outlined in paragraph 17 herein.

## **THE INSTANT CLAIM**

17. The Defendant has discriminated, and is continuing to discriminate, against the

Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).  A preliminary inspection of La Quinta by Wyndham Louisville has shown that violations exist.  These violations personally encountered or observed by Mrs. Gallagher include, but are not limited to:

**A.** **Accessible Route**

1) There is no marked access aisle adjacent to the vehicle pull-up space of the passenger loading zone making it difficult for the Plaintiff to safely traverse to the lobby entrance, in violation of Sections 503.3 and 503.3.3 of the 2010 ADA Standards, whose resolution is readily achievable.

2) There is not a compliant path of travel connecting the accessible parking spaces to the accessible entrances making it difficult for the Plaintiff to traverse on the accessible route within the site, in violation of Section 206.2.2 of the 2010 ADA Standards, whose resolution is readily achievable.

3) The car obstructed the walkway's 36 inches of clear width on the making it difficult for the Plaintiff to traverse the accessible route, in violation of Sections 403.5.1 and 502.7 in the 2010 ADA Standards, whose resolution is readily achievable.

**B**. **Parking**

1) The accessible parking space identification sign does not meet the minimum requirement of being at least 60 inches above the ground as required, in violation of Section 502.6 in the 2010 ADA Standards, whose resolution is readily achievable, which makes it more difficult to identify the disabled parking space.

**C.** **Public Restroom**

1) The rear wall grab bar is not centered on the water closet as required making it difficult for the Plaintiff to use, in violation of

6

        Section 604.5.2 in the 2010 ADA Standards, whose resolution is readily achievable.

2) The flush control is not located on the open side of the water closet making it difficult for the Plaintiff to utilize, in violation of Section 604.6 in the 2010 ADA Standards, whose resolution is readily achievable.

3) The toilet paper dispensar is not in the compliant location as required, making it difficult for the Plaintiff to use, in violation of Section 604.7 in the 2010 ADA Standards, whose resolution is readily achievable.

4) The Plaintiff had to use caution when utilizing the public restroom lavatory due to the drain pipe and water lines being exposed, in violation of Section 606.5 in the 2010 ADA Standards, whose resolution is readily achievable.

5) The public restroom door hardware requires tight pinching and twisting of the wrist to unlock making it difficult for the Plaintiff to use, in violation of Section 404.2.7 and 309.4 in the 2010 ADA Standards, whose resolution is readily achievable.

6) The public restroom does not provide the required maneuvering clearance, making it difficult for the Plaintiff to exit the room, in violation of Section 404.2.4 in the 2010 ADA Standards, whose resolution is readily achievable.

7) The paper towel dispenser is mounted too high for the Plaintiff to utilize, in violation of Section 308.3 in the 2010 ADA Standards, whose resolution is readily achievable.

**D.**     **Guest Room 108**

1) The latch side of the pull door from the inside of the guest room does not provide 18 inches of maneuvering clearance as required making it difficult for the Plaintiff to operate the door, in violation of Section 404.2.4.1 in the 2010 ADA Standards, whose resolution is readily achievable.

2) The latch lock for the guest room door exceeds the maximum height allowance of 48 inches, making it difficult for Plaintiff to reach and utilize, in violation of Sections 308.2.1 and 309.3 in the 2010 ADA Standards, whose resolution is readily achievable.

3) The flush control is not located on the wide side of the water closet as required, making it difficult for the Plaintiff to flush, in violation of Section 604.6 in the 2010 ADA Standards, whose resolution is readily achievable.

4) The toilet paper dispenser is not in the compliant location of a minimum of 7 inches and a maximum of 9 inches from the front of the toilet to the center line of the toilet paper as required, making it difficult for the Plaintiff to utilize, in violation of Section 604.7 in the 2010 ADA Standards, whose resolution is readily achievable.

5) The roll-in shower controls are not in the compliant location and are mounted too high, making it difficult for the Plaintiff to operate, in violation of Section 608.5.2 in the 2010 ADA Standards, whose resolution is readily achievable.

6) The roll-in shower threshold is 2 inches high, which made it difficult for the Plaintiff to enter, in violation of Section 608.7 in the 2010 ADA Standards, whose resolution is readily achievable.

7) The Plaintiff had to use caution when utilizing the lavatory due to the drain pipe and water lines being exposed, in violation of Section 606.5 in the 2010 ADA Standards, whose resolution is readily achievable.

8) The door hardware to the storage closet and the adjoining room require tight grasping and twisting at the wrist to operate, making it difficult for the Plaintiff to operate, in violation of Section 404.2.7 in the 2010 ADA Standards, whose resolution is readily achievable.

9) The lamp does not provide a 30 inch by 48 inch clear floor space due to the location of the chair making it difficult for the Plaintiff to use, in violation of Sections 305.3, 305.5 and 305.6 in the 2010 ADA Standards, whose resolution is readily achievable.

      **E.**      **Lack of Compliant Disabled Rooms Properly Disbursed**

            1)      The subject hotel lacks the required number of compliant disabled rooms, and the disabled rooms are not dispersed amongst the various classes of guest rooms in violation of Section 224.5 of the 2010 ADAAG.

      **F.**      **Maintenance**

            10)      The accessible features of the facility are not maintained, creating barriers to access for the Plaintiff, as set forth herein, in violation of 28 C.F.R. 36.211.

2. All of the foregoing violations are violations of the 1991 Americans with Disabilities Act Guidelines (ADAAG), and the 2010 ADA Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

3. The discriminatory violations described in paragraph 17 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires further inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

4. The individual Plaintiff, and all other individuals similarly-situated have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

5. Defendant has discriminated against the individual Plaintiff by denying her access

to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R. 36.302 *et seq.*  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly-situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

6. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that has existed prior to January 26, 1993, 28 C.F.R. 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 C.F.R. 36.402; and finally if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 C.F.R. 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

7. Appendix A to Part 36 - Standards for Accessible Design (28 C.F.R. Part 36, App. A), sets out guidelines for accessibility for buildings and facilities.  These guidelines are to be applied during design, construction and alteration of such buildings and facilities to the extent required by regulations issued by Federal Agencies, including the Department of Justice, under

the ADA.

8. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 C.F.R. 36.505.

9. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

10. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted. Furthermore, the public interest would not be disserved by a permanent injunction.

11. Pursuant to 42 U.S.C. § 12188, this Court is provided authority to grant Plaintiff Injunctive Relief including an order to alter La Quinta by Wyndham Louisville to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

    A. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*.

    B. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the

    extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such stops that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

C. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

D. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

E. The Order shall further require the Defendant to maintain the required accessible features on an ongoing basis.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **2nd** day of November, 2020, a true and correct copy of the foregoing has been electronically filed via the Court's CM/ECF System, which will automatically send a Notice of Electronic Filing to Attorneys for the Defendant, Kimberly J. O'Donnell, Esq., kim.odonnell@dentons.com, Dentons Bingham Greenebaum LLP – Lexington, 300 W. Vine Street, Suite 1200, Lexington, KY 40507-4696.

Respectfully Submitted,

**/s/John P. Fuller**
John P. Fuller, Esq., *pro hac vice*
Fuller, Fuller & Associates, P.A.
12000 Biscayne Blvd., Suite 502
North Miami, FL 33181
Telephone (305) 891-5199
Facsimile  (305) 893-9505
jpf@fullerfuller.com
and
Franklin S. Yudkin, Esq.
KY Bar No. 79590
8615 Broecker Blvd.
Louisville, KY 40241
Telephone (502) 724-7111
Franklin@yudkinlaw.com
*Attorneys for Plaintiff*